## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JODY BUTLER** | **CIVIL ACTION** |
| **VERSUS** | **NO.   16-3399** |
| **DARREL VANNOY, WARDEN** | **SECTION: "R"(5)** |

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Jody Butler, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    In 2010, he was charged by bill of information with possession of marijuana and possession with intent to distribute cocaine.[1]    On January 4, 2011, a jury found him guilty as charged with possession of marijuana (count one) and guilty

---

[1] State Rec., Vol. 1 of 5, Bill of Information, Orleans Parish.

of only simple possession of cocaine (count two).[2]    His motion for a new trial and for post-verdict judgment of acquittal were denied, and he was sentenced to four years imprisonment on each count.[3]    The State subsequently filed a multiple-offender bill.    On February 11, 2011, the trial court vacated the four-year sentence originally imposed as to each count and he was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence as a fourth-felony offender on count one, possession of marijuana.[4]

On direct appeal, Butler asserted that the trial court erred in denying his motion to suppress the evidence and his statement.    He also raised an error-patent sentencing claim. On October 3, 2012, the Louisiana Fourth Circuit Court of Appeal pretermitted the patent sentencing errors because it held the denial of the motion to suppress was error that required reversal.    The appellate court vacated the conviction and remanded the case.[5] The State challenged that ruling in the Louisiana Supreme Court.    By per curiam opinion issued May 17, 2013, the Louisiana Supreme Court reversed the decision of the Louisiana Fourth Circuit and remanded for consideration of the sentencing errors pretermitted on

---

[2]  State Rec., Vol. 1 of 5, Minute Entry, 1/04/11.

[3]  State Rec., Vol. 1 of 5, Minute Entry, 1/11/11); State Rec., Vol. 4 of 5, Transcript of Sentencing (January 11, 2011).

[4]  State Rec., Vol. 1 of 5, Minute Entry, 2/11/11; *see also* State Rec., Vol. 4 of 5, Transcript of Multiple Offender Adjudication (February 11, 2011).    The fact that both original sentences were vacated and only one enhanced sentence imposed for possession of marijuana was noted as a patent error on direct appeal and subsequently corrected by the trial court on remand.

[5]  *State v. Butler*, 2011-KA-0985 (La. App. 4 Cir. 10/03/12), 101 So.3d 121; State Rec., Vol. 3 of 5.

original appeal.[6]   On November 1, 2013, the Louisiana Supreme Court denied Butler's

request for a rehearing.[7]   On April 21, 2014, the United States Supreme Court denied his

petition for writ of certiorari.[8]   On July 23, 2014, the Louisiana Fourth Circuit on remand

held that "to the extent the trial court vacated both sentences and imposed only one

sentence, it is clear error."   The appellate court remanded the matter to the trial court with

instructions to impose the original four-year sentence (vacated in error) on count two and

to prepare an appropriate minute entry reflecting the sentences imposed on both counts.[9]

The trial court corrected the sentencing error on September 30, 2014.[10]

On or about October 14, 2014, Butler filed an application for post-conviction relief

with the state district court.[11]   In that application, he raised several claims of ineffective

---

[6]   *State v. Butler*, 2012-K-2359 (La. 5/17/13), 117 So.3d 87; State Rec., Vol. 5 of 5.

[7]   *State v. Butler*, 2012-KH-2359 (La. 11/01/13), 124 So.3d 1106.

[8]   *Butler v. Louisiana*, 134 S.Ct. 1879, 188 L.Ed.2d 918 (2014).

[9]   *State v. Butler*, 2011-KA-0985 (La. App. 4 Cir. 7/23/14), 147 So.3d 254; State Rec., Vol. 4 of 5.

[10]   State Rec., Vol. 1 of 5, Minute Entry, 9/30/14.   The minute entry reflects that defendant appeared via teleconference with OPD counsel, and as instructed by the appellate court, the trial court imposed the following sentence:   "As to Count 1, the sentence of 2/11/11 remains the same: life imprisonment without the benefit of probation, parole or suspension of sentence pursuant to 15:529.1.   As to Count 2, the defendant is resentenced to 4 years DOC at hard labor, with credit for time served.   This sentence is to run concurrent with Count 1.   Note: the life sentence imposed on 2/11/11 was to Count 1, 40:966(D)(3) only as the defendant was found to be a quadruple offender pursuant to 15:529.1."

[11]   Although it is referenced as an exhibit to the writ applications filed in the court of appeal and the Louisiana Supreme Court, the state-court record does not contain a copy of the application for post-conviction relief.   The trial court's order denying relief reflects that the application was filed on October 14, 2014.   Because timeliness is not a contested issue

assistance of counsel.    He claimed that he was denied effective assistance of appellate counsel for failing to that trial counsel was ineffective for not requesting and presenting evidence for a downward departure from the mandatory life sentence during the multiple-bill sentencing hearing.    He also asserted that trial counsel was ineffective because counsel misadvised him into not accepting a plea offer and omitted any warning of the collateral consequences of going to trial, and also for failing to investigate the essential facts of the case and interview and call eyewitnesses.    On November 18, 2014, the district court rendered a written judgment denying relief.[12]    Butler's related supervisory writ application was denied by the Louisiana Fourth Circuit Court of Appeal without reasons on February 13, 2015.[13]    His writ to the Louisiana Supreme Court was denied on January 25, 2016.[14]

On April 11, 2016, Butler filed his federal application for *habeas corpus* relief.[15]   In his petition, Butler asserts the same two grounds he raised on direct appeal (*i.e.*, the single adjudication of multiple-offender status and imposition of a single life sentence was erroneous and the trial court erroneously denied the motion to suppress), and also arguably raises the three grounds of ineffective assistance of counsel asserted in his application for

_____

herein, the Court references that filing date.

[12]   State Rec., Vol. 5 of 5, District Court Judgment signed November 18, 2014 (attached as an Exhibit to Louisiana Fourth Circuit Writ Application No. 2015-K-0103.

[13]   *State v. Butler*, 2015-K-0103 (La. App. 4 Cir. 2/13/15); State Rec., Vol. 5 of 5.

[14]   *State ex rel. Butler v. State*, 2015-KH-0545 (La. 1/25/16), 184 So.3d 10. State Rec., Vol. 5 of 5.

[15]   Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.

post-conviction relief (*i.e.*, appellate counsel was ineffective for failing to assert as error the ineffective assistance of trial counsel in not requesting and presenting evidence for a downward departure from the mandatory life sentence during the multiple-bill sentencing hearing; trial counsel was ineffective for substandard advice that prevented his acceptance of a plea deal and omitted any warning of the collateral consequences of going to trial; and trial counsel was ineffective for failing to investigate the essential facts of the case and interview and call eyewitnesses).[16]

The State filed a response conceding that the federal application is timely.    The State asserts that the sentencing error claim is unexhausted and patently meritless, the ineffective-assistance-of-appellate-counsel claim is procedurally barred, and the remaining claims should be dismissed on the merits.[17]

### Preliminary Review: Exhaustion and Procedural Default

As the State notes and the procedural history herein shows, Butler's sentencing claim is unexhausted.[18]    Nonetheless, under the Antiterrorism and Effective Death Penalty Act of

---

[16]  Although his federal application and memorandum in support references only the two direct review claims, his Appendix in Support contains a Table of Contents directing the Court to his attached Post-Conviction/Habeas Corpus Writ), which the State's response identified and observed implies an intent to raise the ineffective-assistance-of-counsel claims herein as well.    The State has briefed those ineffective assistance of claims in its response.    Rec. Doc. 12, p. 7 n. 17.    The Court will therefore consider all five claims as asserted in the federal application.

[17]  Rec. Doc. 12.

[18]  Butler did not present the sentencing claim to the Louisiana Supreme Court. That claim was pretermitted originally by the appellate court and then found to have merit by the appellate court on remand.    The sentence was ultimately corrected by the trial court on remand, after which Butler did not appeal or raise the issue in his post-conviction

1996 (AEDPA), a district court may, in its discretion, deny such unexhausted claims on the merits.    *See Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005) (citing 28 U.S.C. § 2254(b)(2)) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").    This is particularly appropriate where, as here, the unexhausted claim is patently without merit.

The Court also rejects the State's argument that Butler's ineffective-assistance-of-appellate-counsel claim is procedurally barred from federal review.    The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

*Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).    The State's argument for a procedural bar in this case is misplaced.    Contrary to the State's argument, the Louisiana Supreme Court's ruling in Writ No. 2015-KH-0545, reflects a denial on the merits of the ineffective-assistance claims, *not* a clear rejection on procedural grounds. The Louisiana Supreme Court held that his "*sentencing claims* are not cognizable on collateral review," citing La. C.Cr.P. art. 930.3 and *State ex rel. Melinie v. State*, 93-1380 (La. 1/12/96),

---

applications filed in the state courts.

665 So.2d 1172.[19]    The Supreme Court of Louisiana in *Melinie* held that article 930.3 provides no basis for review of claims of excessiveness or other sentencing error in post-conviction proceedings.    *See also State v. Hebreard*, 98-0385 (La. App. 4 Cir. 3/25/98), 708 So.2d 1291, which explicitly decreed that a challenge to petitioner's adjudication as a multiple offender was not a proper ground for post-conviction relief.    The State misinterprets the reference to "sentencing claims" as if it relates to his ineffective-assistance-of-counsel-on-appeal claim.    However, the record reflects that Butler filed a "motion for reconsideration of sentence," which was construed by the Louisiana Supreme Court as a supplement to his writ application.    In that supplement, he argued for reconsideration of his life-imprisonment sentence in light of new legislation and penalties for marijuana possession.    The Supreme Court refused to consider *those* sentencing claims as procedurally barred from review.    The Court therefore rejects the State's contention that claim three, *i.e.*, ineffective assistance of counsel on appeal, is procedurally barred on federal review, and will proceed to a merits review of all five asserted claims for relief.

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by the AEDPA, provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State

---

[19]    *State ex rel. Butler v. State*, 2015-KH-0545 (La. 1/25/16), 184 So.3d 10.

court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

### Facts

The following facts were established at the motion hearing and trial and summarized by the Louisiana Fourth Circuit Court of Appeal:

> Officer Norbert Henry, a New Orleans Police Department (NOPD) officer assigned to the Sixth District, testified at the motion hearing that he and his partner, Officer Jemar Goines, first observed the defendant leaning into a SUV as they approached the intersection of Danneel and Seventh Streets in their patrol unit. Upon seeing the police, the driver of the SUV "sped off" and the defendant "moved away from the vehicle" and then "hopped on his bike and ... rode the bike ... eastbound on Danneel." When Officer Goines told the defendant to stop, the defendant immediately complied "[a]nd Mr. Butler came over to the police unit and Officer Goines told him to put his hands on the police car." According to Officer Henry, his partner then "did a pat down for

officer safety" and "[d]uring the search ... discovered a clear plastic bag containing vegetable matter." At that point, according to Officer Henry, Officer Goines placed the defendant under arrest and advised him of his *Miranda* rights.

On cross-examination, Officer Henry reiterated that when he first observed the defendant, he "was just leaning into" the SUV. Although he observed no interaction between the defendant and anyone in the SUV, when the SUV "sped off" within "several seconds" of observing the police unit, Officer Henry and his partner, rather than pursuing the SUV or obtaining its license plate number, ordered the defendant to stop as he got on his bicycle and started to ride off. According to Officer Henry, upon being asked to stop, the defendant did so with no argument or threatening gesture. Moreover, Officer Henry stated that he observed no lumps in the defendant's waistband or weapons visible on his person, that the defendant was not holding up his pants as if trying to conceal a gun, and that the defendant did not reach for anything. Nonetheless, after complying with the request to stop, the defendant was immediately told to put his hands on the police car and patted down by Officer Goines. According to Officer Henry, his partner discovered marijuana in the defendant's shoe during the patdown and, subsequently, during the search incident to the defendant's arrest for possession of marijuana, found several loose pieces of cocaine in the defendant's hat and his right front coin pocket.

Officer Goines also testified at the motion hearing, relating that he and his partner, accompanied by two other marked police units, were on proactive patrol in the area around Seventh and Danneel Streets "which is known as [a] high crime, drugs and gun area." At approximately noon, as the police unit arrived at the corner of Seventh and Danneel Streets, Officer Goines observed a black male (the defendant) who was unknown to him leaning into the window of a SUV. The SUV immediately "sped off" and the defendant "got on his bicycle and went east on Danneel, going against traffic on the sidewalk." Accordingly, Officer Goines, elected to "conduct a suspicious person stop" of the cyclist.

> I told Mr. Butler to stop where he was at, and [sic] which he fully complied. I told him to put his hands in the air, [sic] which again he fully complied.
>
> We relocated to the police vehicle, patted him down for officer safety. When I pat someone down, I usually raise their pants up because their pants sag, so I patted down his left leg. I looked down and I seen [sic] a bag of marijuana resting on his left side of his shoe, on the lip of the shoe,

next to his ankle, on his white sock.

After finding the marijuana, Officer Goines advised the defendant of his *Miranda* rights and, upon checking the defendant's hat and coin pocket, retrieved several rocks of cocaine. After being again being advised of his *Miranda* rights, the defendant made the statement to Officer Goines that he had "messed up his day, he was going home and get high."

On cross-examination, Officer Goines conceded he did not see the marijuana until he raised up the defendants pants at the waist with his finger. He also conceded that, although he was only six feet away from the defendant when he first observed him leaning into the SUV, he did not see any interchange between the defendant and any occupant of the SUV. In addition, Officer Goines admitted that that he did not see the defendant holding any weapons, holding his waistband as if he had a weapon, or make any threatening gesture.

Officer Goines also testified at trial. He stated once again that he and the other police officers were on pro-active patrol when he observed the defendant leaning in the window of a black SUV, that it was noon,[20] and there was nothing to obstruct his view of the defendant. According to Officer Goines' trial testimony, when he "first observed the officers, Mr. Butler actually looked over his left should and looked kinda startled." Next, the defendant "then, at that time, got on his bicycle going against traffic headed east on the sidewalk." Officer Goines revealed that several other people who were standing on the street when the three patrol cars drove up went into the corner store as the SUV "sped off." Then Officer Goines exited his vehicle and "went to go and get Mr. Butler to stop from fleeing the scene," while the other officers went into the store.

Q. And did he stop?

A. He stopped.

Q. And what happened next?

A. Well, I instructed Mr. Mr. Butler to stop, in which he fully complied. I relocated him to the police vehicle and conducted a pat down.

Q: And is that, um, like a normal thing that you would do a pat down?

---

[20]  Officer Goines testified that he was unable to see any of the occupants of the SUV because the windows of the vehicle had an illegal "limo" tint.

A. Yes, ma'am, for officers' safety.

Q. Okay, And how does that pat down work exactly?

A. On a normal day—well, the individuals in that general area usually wear their pants below the buttocks, so we usually raise their pants up above their, their waist so we get a better feel off the person. And upon me patting down Mr. Butler in his crotch area and along his pockets, I went all the way down his leg, and when I went down his left leg, that's when I seen [sic] the little bag of marijuana on the left—in his left shoe, resting upon hi—the left lip of the white sock of his shoe.

Subsequently, Officer Goines identified the small bag of marijuana and five pieces of rock cocaine that he retrieved from the defendant and John F. Palm, Jr., criminalist for the NOPD and expert in the testing of narcotics, testified that the materials tested positive, respectively, for marijuana and cocaine.[21]

## Analysis

### A. *Sentencing Error*

Butler's first claim is that the trial court committed sentencing error by conducting a single adjudication of multiple-offender status and imposing a single life sentence without regard to the two counts of conviction.    As correctly noted by the State, to the extent he argues that the state trial court misapplied state law, that purely state-law claim is not cognizable on federal *habeas* review.    "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."    28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).    A federal court may not grant *habeas* relief based on an alleged error in the interpretation or application of state law.    *Estelle v. McGuire*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16

---

[21]    *State v. Butler*, 101 So.3d at 126-28 (footnote in original).

F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal *habeas* review does not lie for errors of state law).    Furthermore, the Court notes that the sentencing error was not only considered, but ultimately cured, when the Louisiana Fourth Circuit remanded the case to the trial court for correction and that correction in sentencing was accomplished.    Butler is not entitled to relief on this claim.

B. *Fourth Amendment Violation – Motion to Suppress*

Butler asserts that the trial court erred when it denied his motion to suppress the contraband and his statement obtained as a result of an illegal arrest.    He claims that his constitutional rights under the Fourth Amendment were violated by the admission of this evidence.

Federal courts will not address Fourth Amendment claims on *habeas* review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not precluded by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494–495, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).    A "full and fair" opportunity as contemplated by *Stone* refers to thoughtful consideration by the fact finder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986); *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Court of Appeals for the Fifth Circuit has interpreted an

"opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). Simply stated, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exploited or is unsuccessful. *Janecka*, 301 F.3d at 320–21. The *Stone* bar applies even if the state-court rulings regarding the Fourth Amendment claims were in fact erroneous. *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978).

In the instant case, the record indicates that Butler filed a pretrial motion to suppress, which was denied by the trial court after a full evidentiary hearing. The Louisiana Fourth Circuit's opinion on direct appeal further illustrates that the Louisiana courts did, in fact, provide him with the opportunity to litigate any Fourth Amendment claims. The Louisiana Supreme Court also conducted discretionary review of that claim. Because Butler cannot show that the Louisiana courts provided no procedure by which he could raise his Fourth Amendment claims, any substantive Fourth Amendment grounds asserted by Butler are barred from federal *habeas corpus* review by *Stone.*

C.  *Ineffective Assistance of Trial and Appellate Counsel*

Butler asserts that trial counsel was ineffective for providing him substandard advice that prevented his acceptance of a plea deal and failed to warn him of the collateral consequences of going to trial, and for failing to investigate the essential facts of the case and interview and call eyewitnesses. He claims that appellate counsel was ineffective for

failing to assert as error the ineffective assistance of trial counsel in not requesting and presenting evidence for a downward departure from the mandatory life sentence during the multiple-bill sentencing hearing.    The state district court rejected these claims raised on post-conviction relief.    The appellate courts likewise denied relief.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective-assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.

*See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected Butler's ineffective-assistance claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).    In fact, the United States Supreme Court has held that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt."    *Burt v. Titlow*, 134

S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

Butler first claims that counsel misadvised him regarding taking a plea deal of five years on each count without a multiple bill, and not informing him about the consequences of rejecting it.    According to Butler, counsel told him that "she did not know what he should do, so [he] moved for a continuance to hire a private counsel to advise him on his better options of going to trial or accepting the plea offer."[22]    Contrary to his argument that counsel tried to correct her mistake by filing a motion for new trial regarding the deal, the state district court in rejecting the claim noted that his assertion was untrue.    The motion for new trial merely stated that a plea deal was "pulled at the last minute."[23]    That motion also explained that Butler felt that a new deal might be procured with additional time or through hiring a private attorney, but the trial court denied the motion for a continuance. In denying the PCR claim, the state district court concluded "there was no proof in the motion or in [his] application that he was advised not to take a plea deal."[24]

Butler alleges that he was offered a favorable plea deal and that he discussed it with defense counsel.    He claims that "counsel misadvised him into not accepting a plea offer." However, it appears the plea offer was simply withdrawn by the State before Butler had either accepted or rejected it.    Butler has not alleged and the record does not show that the

---

[22]  Rec. Doc. 3-1, p. 66.

[23]  State Rec., Vol. 4 of 5, Motion for New Trial and for Post-Verdict Judgment of Acquittal.

[24]  State Rec., Vol. 5 of 5, State District Court Judgment denying PCR.

withdrawal of that offer was attributable to any action or omission on the part of defense counsel.    The state-court record in this case therefore does not support Butler's contention that he rejected a plea offer based on the purported incompetent advice of counsel.    Nor has Butler ever alleged that if counsel had been effective and had properly advised him, he would have accepted the plea offer instead of proceeding to trial.    Regardless of the advice (competent or not) offered by counsel, the formal offer was withdrawn by the State and was therefore off the table.    Thus, he cannot show that the outcome of the plea process would have been different with competent advice.    *Lafler v. Cooper*, 566 U.S. 156, 163-164 (2012). The state court's decision rejecting this ineffective assistance claim was reasonable under *Strickland*.

Next, Butler asserts that counsel was ineffective for failing to conduct adequate pretrial investigation and interview or call witnesses in order to present a competent defense.    He alleges that counsel failed to interview individuals who may have witnessed the events surrounding his arrest, to inquire about the black SUV that sped away, or to present the testimony of every officer on the scene at the pretrial motion hearing "to see if they all had the exact same story."[25]    Butler concludes that "had his counsel done a reasonable amount of investigations and interviewed the eyewitnesses on the scene and the other officers on the scene, counsel would have got the truth of what happened – that there was no black SUV truck…. It would have proved a strong fact that the police did not have legal grounds to arrest, stop and frisk petitioner.    In other words, petitioner may have never

---

[25]  Rec. Doc. 3-1, p. 68.

made it to trial.... [counsel's] inactions caused [him] to go to trial without any witnesses on his behalf and a helpless defense."[26]

To satisfy *Strickland*, a petitioner "'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'"    *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)); *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).    The petitioner must provide factual support demonstrating what exculpatory evidence further investigation would have revealed. *Moawad*, 143 F.3d at 948; *Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).    A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result.    *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).    For these reasons, brief and conclusory allegations that the attorney's representation was deficient because of a failure to investigate and develop useful evidence will not suffice.    *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Additionally, as the United States Fifth Circuit Court of Appeals has explained regarding claims of uncalled witnesses:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial

---

[26]  *Id.* at 70-71.

strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

In this case, Butler offers nothing but broad and purely speculative assertions that further investigation of the crime-scene area and interviews with police officers and "witnesses who lived around the area" would have produced additional relevant information necessary to support and present a viable defense. Butler's argument falls well-short of proving the existence of exculpatory evidence that would have been found through further investigation. As the state district court found, the decision not to search for witnesses whom Butler claimed observed the entire incident constituted sound trial strategy. Butler has named no specific individual, much less offered their proposed testimony, to show that counsel's failure to present defense witnesses constituted deficient performance or that the omission prejudiced the defense's case.

Indeed, Butler has brought forth no evidence establishing that there is a reasonable

probability that further investigation would have revealed any information which, if it had been discovered and presented at trial, would have resulted in a different outcome at trial. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation and his claim necessarily fails.    *Everett v. Louisiana*, Civ. Action No. 08–4745, 2009 WL 1971370, at *5 (E.D. La. July 7, 2009); *see also Twillie v. Rader*, Civ. Action No. 12–1421, 2012 WL 3990392, at *5 (E.D. La. Aug.14, 2012), *adopted*, 2012 WL 3990490 (E.D. La. Sept. 10, 2012).    Here, the record demonstrates that counsel succeeded in obtaining a guilty verdict of simple possession rather than possession with intent to distribute cocaine, which suggests a more than ample defense was presented at trial. Accordingly, Butler's claims that trial counsel was ineffective do not merit *habeas* relief.

Finally, Butler claims that appellate counsel was ineffective in not raising a claim of ineffective assistance of trial counsel with respect to habitual-offender sentencing.    The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *Duhamel v. Collins,* 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant."    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).    Failing to raise every meritorious claim on appeal does not make counsel deficient.    *Green v. Johnson,* 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)). When alleging ineffective assistance of appellate counsel, a petitioner "must show that the

neglected claim would have had a reasonable probability of success on appeal." *Duhamel*, 955 F.2d at 967.    Courts give great deference to professional appellate strategy for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]    *Jones v. Barnes*, 463 U.S. at 751-52.    This is true even where the weaker arguments have merit.    *Id.*    The applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.    *See, e.g., Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (citing *Jones v. Barnes*, 463 U.S. at 751-52)).

    Here, appellate counsel reasonably determined that it was not in Butler's best interest to raise a claim related to trial counsel's alleged ineffectiveness in not arguing for a downward departure from the mandatory life sentence during multiple-offender proceedings.    Instead of pursuing a claim typically raised during post-conviction proceedings, appointed counsel chose to pursue the undoubtedly stronger position with potential merit, *i.e.*, that the trial court erred in denying the motion to suppress the contraband and his statement.    As the court of appeal's original opinion demonstrates, appellate counsel reasonably focused the court's attention on the suppression issue, which initially gained Butler a reversal of his conviction.    Butler has failed to establish that he was denied the effective assistance of appellate counsel due to his attorney's failure to raise an issue on direct appeal regarding the denial of the effective assistance of trial counsel.    The state court's determination was not contrary to or an unreasonable application of *Strickland*.

    For the foregoing reasons, Butler has not demonstrated that the state court's decision

rejecting these ineffective-assistance-of-counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Butler's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[27]

New Orleans, Louisiana, this ___11th___ day of ____May____, 2017.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[27] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.